**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————

**BASHEEN RUSH,**

                       **Plaintiff,**               **09 Civ. 9918 (JGK)**

         **- against -**                    **OPINION AND ORDER**

**BRIAN FISCHER, ET AL.,**

                     **Defendants.**
————————————————————————

**JOHN G. KOELTL, District Judge:**

The plaintiff, Basheen Rush, brings this action against the following defendants: Brian Fischer, Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"); Dr. Lester Wright, former Deputy Commissioner and Chief Medical Officer of DOCCS; Nurse Diana Weed; Nurse Practitioner Jill Northrop; Dr. John Alves; Michael Sheahan, Southport Correctional Facility Deputy Superintendent for Security; Sergeant Michael Furman; Paul Chappius, Jr., Southport Correctional Facility Deputy Superintendent for Security; Nurse J. Gutouski; Corrections Officer E. Bryant; Corrections Officer Dean Jandreau; Captain Louis Pingotti; Dr. Wesley Canfield, Southport Correctional Facility Health Services Director; Nurse Angie Gorge; and Physician Assistant Benjamin Oaks (collectively, "the defendants").[1,2]  The plaintiff, a pro se

---

[1] The plaintiff has also named the following individuals as defendants in this action: Dr. Halcok, Dr. Pirelli, Dr. Maw, and

inmate, claims that his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution were violated when he was denied certain medical treatment at various correctional facilities.  He brings this action pursuant to 42 U.S.C. § 1983.  He also alleges that the defendants violated several provisions of the New York State Constitution.  The defendants now move to dismiss the Amended Complaint for improper venue and for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(3)[3] and 12(b)(6) of the Federal Rules of Civil Procedure, respectively.

---

Superintendent Marshall.  Those individuals have not been served, and therefore the claims against them are dismissed without prejudice.  See Fed. R. Civ. P. 4(m).

[2] In addition, the plaintiff has named the Sing Sing Medical Department, the Downstate Medical Department, the Auburn Medical Department, and the Southport Medical Department as defendants in this action.  The plaintiff also makes allegations against the Attica Medical Department, the Shawangunk Medical Department, the Eastern Medical Department, and the Coxsackie Medical Department in the body of the Amended Complaint. However, as part of the New York State DOCCS, a state agency, the correctional facility medical departments are not "persons" subject to liability under § 1983.  See Williams v. Sindos, No. 08 Civ. 378, 2009 WL 613317, at *3 n.4 (S.D.N.Y. Mar. 9, 2009) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)) (noting that a state correctional facility is not a "person" subject to liability under § 1983).  Therefore, all of the claims against the medical departments are dismissed.

[3] The defendants' motion to dismiss for improper venue pursuant to Rule 12(b)(3) is directed solely at the plaintiff's claims relating to Southport Correctional Facility, and will be considered in the final portion of this Opinion.

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession

or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (brackets and internal quotation marks omitted).  "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (internal quotation marks omitted).  Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.


                                II.

The following facts alleged in the Amended Complaint are accepted as true for the purposes of this motion to dismiss, unless otherwise indicated.

Upon his arrival at DOCCS in July 1995, the plaintiff informed the medical staff that he had an onion allergy.  (Am. Compl. ¶ 1.)  In February 2000, while at Greenhaven Correctional Facility ("Greenhaven"), the plaintiff underwent a medical

                                 4

examination for the back and leg pain he was experiencing.  (Am. Compl. ¶ 6.)  Dr. Magill ordered a course of treatment which included Percocet pain medication, nerve-blocker shots, and a back brace.  (Am. Compl. ¶ 7.)  In January 2001, also while at Greenhaven, the plaintiff underwent surgery on his right wrist and was recommended a wrist brace and a larger cuff for that wrist.  (Am. Compl. ¶¶ 3-4.)

On or about November 1, 2004, the plaintiff was transferred from Greenhaven to Southport Correctional Facility ("Southport").  (Am. Compl. ¶ 40.)  Upon his arrival at Southport, the previously prescribed treatment for all of his medical conditions was stopped.  (Am. Compl. ¶¶ 46-47.)  In particular, Nurse Weed told the plaintiff that the nerve-blocker shots he requested were a type of medication not allowed at Southport for security reasons.  (Am. Compl. ¶¶ 40-41.)  On January 24, 2005, Deputy Superintendent of Security Chappius allegedly disregarded the plaintiff's wrist injury by denying him large handcuffs.  (Am. Compl. ¶¶ 48-49.)  On or about July 15, 2005, the plaintiff was transferred from Southport to Attica Correctional Facility ("Attica").  (Am. Compl. ¶ 50.)  The plaintiff alleges that his previously prescribed medical treatment was stopped approximately two days after his arrival at Attica.  (Am. Compl. ¶ 50.)

On or about April 12, 2007, the plaintiff arrived at Sing
Sing Correctional Facility ("Sing Sing").  (Am. Compl. ¶ 51.)
While under the care of Sing Sing Medical Director Dr. Pirelli,
the plaintiff alleges that he was denied all of his previously
prescribed medical treatment.  (Am. Compl. ¶ 67.)  The plaintiff
wrote to Dr. Pirelli, advising him that he was being denied his
previously prescribed medical treatment.  (Am. Compl. ¶ 68.)
Upon his arrival at Sing Sing, the plaintiff was taken to the
clinic along with two other inmates who received their pain
medications.  (Am. Compl. ¶ 62.)  Dr. Halcok denied the
plaintiff Percocet and told him that the Sing Sing Medical
Department does not issue Percocet, even though the other
inmates allegedly were given their medications.  (Am. Compl.
¶¶ 61-62.)  Also upon his arrival at Sing Sing, the plaintiff
was seen by Nurse Gutouski.  (Am. Compl. ¶ 51.)  When the
plaintiff requested Percocet from Nurse Gutouski, she stated
that he would be getting 500 milligrams of ibuprofen instead.
(Am. Compl. ¶¶ 51-52.)

On April 12, 2007, the plaintiff voiced his complaint about
being denied his previously prescribed medical treatment to
Corrections Officer Bryant.  (Am. Compl. ¶ 70.)  Officer Bryant
told the plaintiff to stop crying and then wrote the plaintiff a
misbehavior report.  (Am. Compl. ¶¶ 70-71.)  The plaintiff was
later taken to a housing unit, where he repeatedly asked for the

Sing Sing Medical Department to be contacted.  (Am. Compl.
¶¶ 72-73.)  The plaintiff saw a nurse at the clinic and another
nurse within his housing unit, but the medical staff refused to
provide treatment.  (Am. Compl. ¶¶ 72-75.)

On or about April 13, 2007, the plaintiff told
Superintendent Marshall that he was being denied his previously
prescribed medical treatment which included Percocet.  (Am.
Compl. ¶ 57.)  Superintendent Marshall responded that the
plaintiff would be seen by Dr. Halcok.  (Am. Compl. ¶ 58.)
Later that day, the plaintiff was taken to the clinic and was
seen by a "person in a white jacket."  (Am. Compl. ¶ 58.)  On or
about April 16, 2007, Dr. Maw came to see the plaintiff and told
him that the Sing Sing Medical Department does not issue
Percocet, even though Dr. Maw allegedly provides Percocet to
other inmates.  (Am. Compl. ¶¶ 65-66.)

On or about April 19, 2007, the plaintiff arrived at
Downstate Correctional Facility ("Downstate").  (Am. Compl.
¶ 76.)  Upon his arrival at Downstate, the plaintiff was taken
to the clinic, where he requested Percocet and was denied.  (Am.
Compl. ¶ 76.)  On or about April 20, 2007, the plaintiff arrived
at Auburn Correctional Facility ("Auburn").  (Am. Compl. ¶ 77.)
The plaintiff sought medical attention and was seen by a nurse,
but she denied his previously prescribed medical treatment.
(Am. Compl. ¶ 77.)  On or about May 7, 2007, the plaintiff was

transferred to Shawangunk Correctional Facility ("Shawangunk"). (Am. Compl. ¶ 79.)  The plaintiff alleges that all medical treatment was stopped upon his arrival at Shawangunk.  (Am. Compl. ¶ 79.)  On or about April 8, 2008, the plaintiff was transferred to Eastern Correctional Facility ("Eastern"), where he was also denied his previously prescribed medical treatment. (Am. Compl. ¶ 80.)

On July 24, 2009, while at Eastern, the plaintiff was released from his cell to go to the mess hall.  (Am. Compl. ¶ 81.)  At the mess hall, the plaintiff picked up his tray and went to sit down.  (Am. Compl. ¶ 81.)  Corrections Officer Jandreau yelled at the plaintiff to come back to the line, and then threw the plaintiff's tray in the trash and asked the plaintiff if he was on a diet.  (Am. Compl. ¶ 81.)  The plaintiff told Officer Jandreau that he was on an onion-free diet, and Officer Jandreau then wrote him a misbehavior report. (Am. Compl. ¶ 81.)  On or about August 19, 2009, Captain Pingotti imposed on the plaintiff a disciplinary term of twelve months in the Special Housing Unit ("SHU") and a corresponding loss of privileges.  (Am. Compl. ¶ 83.)  The plaintiff alleges that he did not have assistance and could not call witnesses at his superintendent hearing.  (Am. Compl. ¶ 84.)

On September 8, 2009, the plaintiff was transferred back to Southport, where all of his previously prescribed medical

treatment was stopped.  (Am. Compl. ¶ 93.)  Dr. Canfield allegedly stopped the plaintiff's Percocet and onion-free diet and took the plaintiff's back brace and medical boot, stating that "his hand was tied" and that "this is a security facility and they will not allow you the boots, back brace and the medication."  (Am. Compl. ¶ 94.)  Nurse Gorge also allegedly withheld medical treatment from the plaintiff, and told Dr. Canfield to stop the plaintiff's onion-free diet and take his back brace for security reasons.  (Am. Compl. ¶ 101.)  On or about September 17, 2009, Dr. Canfield prescribed for the plaintiff two pain relievers, Ultram and Flexeril.  (Am. Compl. ¶¶ 96, 98-99.)  On September 30, 2009, Physician Assistant Oaks allegedly denied the plaintiff medical treatment for his back pain by giving him medication other than Percocet.  (Am. Compl. ¶¶ 102-03.)

On or about January 8, 2010, the plaintiff was transferred to Coxsackie Correctional Facility ("Coxsackie").  (Am. Compl. ¶ 104.)  Upon his arrival, the plaintiff was not provided treatment for "his medical injury."  (Am. Compl. ¶ 104.)

## III.

The defendants assert that the claims against DOCCS Commissioner Fischer and former DOCCS Deputy Commissioner and Chief Medical Officer Dr. Wright should be dismissed because

9

Case 1:09-cv-09918-JGK-RLE   Document 104   Filed 02/15/13   Page 10 of 25

they had no personal involvement in the alleged deprivation of the plaintiff's constitutional rights. A plaintiff must plead the personal involvement of each defendant in a violation of § 1983. "There is no respondeat superior liability in § 1983 cases." Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

The law in this Circuit before Iqbal was that a plaintiff may state a claim against a supervisory defendant in a § 1983 case when the plaintiff alleges that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted). However, courts in this Circuit are divided over the question of how many of the so-called Colon factors survive in the wake of Iqbal. Compare Martinez v. Perilli, No. 09 Civ. 6470, 2012 WL 75249, at *4 (S.D.N.Y. Jan. 5, 2012) ("[T]he five

Colon categories still apply after Iqbal."), with Bellamy v.
Mount Vernon Hosp., No. 07 Civ. 1801, 2009 WL 1835939, at *6
(S.D.N.Y. June 26, 2009) ("Only the first and part of the third
Colon categories pass Iqbal's muster--a supervisor is only held
liable if that supervisor participates directly in the alleged
constitutional violation or if that supervisor creates a policy
or custom under which unconstitutional practices occurred.").

     The Second Circuit Court of Appeals has not addressed the
question directly, but it has indicated that at least some of
the Colon factors other than direct participation remain viable.
See Rolon v. Ward, 345 F. App'x 608, 611 (2d Cir. 2009) ("A
supervisory official personally participates in challenged
conduct not only by direct participation, but by (1) failing to
take corrective action; (2) creation of a policy or custom
fostering the conduct; (3) grossly negligent supervision, or
deliberate indifference to the rights of others."); see also
Scott v. Fischer, 616 F.3d 100, 108-09 (2d Cir. 2010).
Moreover, it remains the case that "there is no controversy that
allegations that do not satisfy any of the Colon prongs are
insufficient to state a claim against a defendant-supervisor."
Aguilar v. Immigration & Customs Enforcement Div. of the U.S.
Dep't of Homeland Sec., 811 F. Supp. 2d 803, 815 (S.D.N.Y.
2011).

With respect to Fischer and Wright, the plaintiff alleges that he sent multiple letters notifying them of his denial of medical treatment, but that they referred the matter to others and otherwise failed to intervene.  (Am. Compl. ¶¶ 8-39.) Specifically, the plaintiff alleges that Fischer directed Wright to respond on Fischer's behalf (Am. Compl. ¶¶ 14-16, 18-20), and that Wright both indirectly and directly referred the plaintiff to the medical staff by instructing him to use the sick-call procedure (Am. Compl. ¶¶ 36, 38).  The defendants argue that the claims against Fischer and Wright should be dismissed for lack of personal involvement.

It is well settled in the Second Circuit that merely receiving letters from an inmate and referring the letters to others does not constitute personal involvement for the purposes of § 1983 liability.  See Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997); see also Smith v. Masterson, No. 05 Civ. 2897, 2006 WL 2883009, at *13 (S.D.N.Y. Sept. 29, 2006).  Here, the plaintiff merely alleges that Fischer and Wright received multiple letters from him and referred the matter to others. (Am. Compl. ¶¶ 8-39.)  This allegation alone is insufficient to constitute the personal involvement of Fischer and Wright.

Moreover, "personal involvement has not been shown where a supervisor's only response to an inmate's complaint is to refer the complaint to the appropriate staff for investigation."

12

Youngblood v. Artus, No. 9:10 Civ. 00752, 2011 WL 6337774, at
*10 (N.D.N.Y. Dec. 19, 2011) (citing Harnett v. Barr, 538 F.
Supp. 2d 511, 524 (N.D.N.Y. 2008); Vega v. Artus, 610 F. Supp.
2d 185, 198 (N.D.N.Y. 2009)).  Youngblood similarly involved an
inmate-plaintiff's suit against Wright and other DOCCS officials
for deliberate indifference to his serious medical needs.  Id.
at *1.  The court dismissed the claims against Wright for lack
of personal involvement, holding that "[i]n light of this
authority, it is clear that . . . neither Plaintiff's letter to
Defendant Wright describing his problems with the medical staff
at Clinton [Correctional Facility], nor Defendant Wright's reply
that Plaintiff should address his issues to 'the health care
staff using the existing sick call procedure,' was sufficient to
establish personal involvement."  Id. at *10.

     Here, as in Youngblood, Wright merely referred the
plaintiff to the medical staff by instructing him to use the
sick-call procedure.  On October 5, 2009, Wright directed
another individual to respond to the plaintiff by stating that
the plaintiff should use the sick-call procedure (Am. Compl.
¶ 36), and November 5, 2009, Wright wrote back to the plaintiff
personally and instructed him to use the sick-call procedure
(Am. Compl. ¶ 38).  Referring the plaintiff to the appropriate
medical staff to address his medical concerns does not establish
Wright's personal involvement.  Because Fischer and Wright were

not personally involved in the alleged deprivation of the plaintiff's constitutional rights, the claims against these two defendants are dismissed for lack of personal involvement.

## IV.

The defendants next assert that the plaintiff's claims based on events occurring in 2004 and 2005 must be dismissed because they are barred by the statute of limitations.  In New York, the statute of limitations applicable to claims brought under § 1983 is three years.  Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004) (citations omitted).  The plaintiff's claims against Nurse Weed, Nurse Practitioner Northrop, Dr. Alves, Deputy Superintendent for Security Sheahan, and Sergeant Furman are based on events that allegedly occurred at Southport in November 2004 (Am. Compl. ¶¶ 40-47), and the plaintiff's claim against Deputy Superintendent of Security Chappius is based on an event that allegedly occurred at Southport in January 2005 (Am. Compl. ¶¶ 48-49).  However, the plaintiff's original Complaint is dated December 3, 2009--almost five years after the last of these events.  Therefore, the claims against defendants Weed, Northrop, Alves, Sheahan, Furman, and Chappius are plainly time-barred and must be dismissed.

14

The plaintiff argues that the continuing violation doctrine applies to prevent his claims from being time-barred.  "To assert a continuing violation for statute of limitations purposes, the plaintiff must 'allege both the existence of an ongoing policy of [deliberate indifference to his or her serious medical needs] and some non-time-barred acts taken in . . . furtherance of that policy." Shomo v. City of New York, 579 F.3d 176, 182 (2d Cir. 2009) (alteration in original) (quoting Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999)). "[A] lack of temporal continuity in allegedly discriminatory acts is 'fatal' to a 'continuing violation' argument." Everson v. N.Y.C. Transit Auth., 216 F. Supp. 2d 71, 79 (E.D.N.Y. 2002) (citations omitted); see also Barnes v. Pozzi, No. 10 Civ. 2554, 2012 WL 3155073, at *5 (S.D.N.Y. Aug. 3, 2012).

In this case, the plaintiff cannot rely on the continuing violation doctrine to resuscitate claims about conduct at Southport in 2004 and early 2005 because the alleged violations of his rights were not continuous.  He was transferred out of Southport in July 2005, and did not return to the facility until September 2009--more than four years later.  The plaintiff has failed to allege that the defendants at Southport violated his rights during this four-year period, and he also had ample time during this period to file a complaint for violations that occurred prior to July 2005.  Moreover, the plaintiff complains

largely of discrete acts, to which the continuing violation
doctrine does not apply.  See Shomo, 579 F.3d at 182 (continuing
violation doctrine does not apply to "discrete acts of
unconstitutional conduct"); Barnes, 2012 WL 3155073, at *5.
Thus, the continuing violation doctrine does not apply to toll
the statute of limitations for the plaintiff's claims that
allegedly arose in 2004 and early 2005.  Only violations that
occurred within the three years prior to December 2009 are
actionable.

**V.**

The plaintiff alleges that Sing Sing Corrections Officer
Bryant and Eastern Corrections Officer Jandreau violated his due
process rights and his right to be free from retaliation by
writing him misbehavior reports (Am. Compl. ¶¶ 70-71, 81-82),
and that Captain Pingotti at Eastern violated his due process
rights at his disciplinary hearing (Am. Compl. ¶¶ 83-84).  The
defendants argue that these due process claims should be
dismissed because the plaintiff has failed to state a claim upon
which relief can be granted.  (Defs.' Mem. Supp. Mot. Dismiss at
20.)  With respect to the allegedly false misbehavior reports,
the defendants note that "a prison inmate has no general
constitutional right to be free from being falsely accused in a
misbehavior report," Boddie v. Schnieder, 105 F.3d 857, 862 (2d

16

Cir. 1997) (citation omitted), and they argue that the plaintiff has failed to allege anything further.  (Defs.' Mem. Supp. Mot. Dismiss at 20.)  With respect to the disciplinary hearing, the defendants argue that the plaintiff's allegations are merely conclusory and that he has not provided sufficient facts to support his claims that his due process rights were violated. (Defs.' Mem. Supp. Mot. Dismiss at 20-22.)  The plaintiff has failed to respond to these arguments.  Therefore, the plaintiff's due process and retaliation claims against defendants Bryant, Jandreau, and Pingotti are deemed abandoned.

## VI.

The plaintiff claims that some of the defendants violated the Eighth Amendment by denying him his previously prescribed medical treatment.  "The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)).  "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

In order to prevail on a deliberate indifference claim, a prisoner must satisfy a two-part test: first, the "objective" prong requires that the deprivation be "sufficiently serious"; and second, the "subjective" prong requires that the charged official act with a "sufficiently culpable state of mind." <u>See, e.g.</u>, <u>Salahuddin</u>, 467 F.3d at 279-80; <u>Johnson v. Wright</u>, 412 F.3d 398, 403 (2d Cir. 2005); <u>Chance</u>, 143 F.3d at 702. With respect to this second prong, the prisoner must plausibly allege more than mere negligence in diagnosis or treatment. <u>See</u> <u>Estelle</u>, 429 U.S. at 105-06; <u>Smith v. Carpenter</u>, 316 F.3d 178, 184 (2d Cir. 2003) (citation omitted). Instead, the prisoner must plausibly allege that the official "[knew] of and disregard[ed] an excessive risk to inmate health or safety . . . ." <u>Farmer</u>, 511 U.S. at 837 (1994); <u>see also</u> <u>Chance</u>, 143 F.3d at 702; <u>Smith</u>, 316 F.3d at 184.

## A.

With respect to his pain medication, the plaintiff alleges that Nurse Gutouski at Sing Sing acted with deliberate indifference to his serious medical needs when she did not provide him with the narcotic medication Percocet.[4]  However,

---

[4] As discussed above, the other defendants who allegedly did not provide the plaintiff with Percocet--Dr. Halcok, Dr. Pirelli, and Dr. Maw--have not been served, and the claims against them are dismissed for failure to prosecute.

although the plaintiff was not provided Percocet, Nurse Gutouski provided him with ibuprofen to manage his pain. (Am. Compl. ¶ 52.) The decision to prescribe one form of pain medication in place of another does not constitute deliberate indifference to a prisoner's serious medical needs. See, e.g., Harris v. Westchester Cnty. Med. Ctr., No. 08 Civ. 1128, 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011) ("The failure to provide stronger pain medication does not constitute deliberate indifference."). Here, the plaintiff has provided no factual allegations that the decision to provide ibuprofen in lieu of Percocet deviated from reasonable medical practice for the treatment of his pain, much less that Nurse Gutouski acted with a culpable state of mind in making this decision. The plaintiff's allegations demonstrate a "mere disagreement over the proper treatment" of his pain, which "does not give rise to an Eighth Amendment violation." Chance, 143 F.3d at 703 (citation omitted). "Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking." Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011) (citation omitted). Indeed, the plaintiff has pleaded facts to negate any culpable state of mind for Nurse Gutouski in alleging that, at about the same time that Nurse Gutouski refused give him Percocet, two medical doctors at the facility--Dr. Halcok and Dr. Maw--also refused to prescribe him Percocet. (Am. Compl. ¶¶ 60-66.)

Therefore, the plaintiff's claim against Nurse Gutouski for
denying him Percocet is dismissed.


                            **B.**

     With respect to his onion allergy, the plaintiff alleges
that Corrections Officer Jandreau acted with deliberate
indifference to his serious medical needs when Jandreau
interfered with the plaintiff's onion-free diet.  According to
the plaintiff, on one occasion Jandreau threw the plaintiff's
meal tray in the trash and asked the plaintiff if he was on a
diet.  (Am. Compl. ¶ 81.)  The defendants argue that this claim
against Jandreau should be dismissed because the denial of a
single meal does not constitute a constitutional violation.

     The Eighth Amendment "require[s] that prisoners be served
nutritionally adequate food that is prepared and served under
conditions which do not present an immediate danger to the
health and well being of the inmates who consume it." Robles v.
Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) (citation and internal
quotation marks omitted).  The denial of a medically prescribed
diet may constitute an Eighth Amendment violation under certain
circumstances.  See Abdush-Shahid v. Coughlin, 933 F. Supp. 168,
180 (N.D.N.Y. 1996); Mandala v. Coughlin, 920 F. Supp. 342, 353
(E.D.N.Y. 1996); Johnson v. Harris, 479 F. Supp. 333, 336-37
(S.D.N.Y. 1979) (Weinfeld, J.) (finding an Eighth Amendment

                             20

violation where there was a continued failure to provide a diabetic inmate with a medically appropriate diet, resulting in a decline in his health).

"While no court has explicitly held that denial of food is a per se violation of a prisoner's Eighth Amendment rights, under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." Robles, 725 F.2d at 15 (citations omitted). However, courts in this Circuit have held that being denied a single meal does not give rise to a constitutional deprivation. See, e.g., Hankerson v. Nassau Cnty. Corr. Facility, No. 12 Civ. 5282, 2012 WL 6055019, at *3 (E.D.N.Y. Dec. 4, 2012) ("[The plaintiff's] allegation that he was denied a single meal while incarcerated . . . does not give rise to a constitutional deprivation."); Scarbrough v. Evans, No. 11 Civ. 131, 2012 WL 4364511, at *5 (N.D.N.Y. May 17, 2012) ("[T]he denial of a single meal is insufficient to state a claim for relief.") (citations omitted).

Here, the plaintiff's Eighth Amendment allegation against Jandreau is based on an incident during which Jandreau caused the plaintiff to miss a single meal at the mess hall that day. (Am. Compl. ¶ 81.) The plaintiff does not allege that this particular incident caused him to miss additional meals or had any negative effects on his health. While Jandreau's alleged action is deplorable, the plaintiff's allegation that he may

have missed one meal falls far short of the Eighth Amendment
standard and thus does not give rise to a constitutional
violation.  Accordingly, the plaintiff's claim against Jandreau
for interfering with his onion-free diet is dismissed.


                                C.

     The plaintiff further alleges that Dr. Canfield, Nurse
Gorge, and Physician Assistant Oaks acted with deliberate
indifference to his serious medical needs when they stopped his
previously prescribed medical treatment at Southport in 2009 and
2010.  Specifically, the plaintiff alleges that Dr. Canfield and
Nurse Gorge stopped his onion-free diet and took his back brace
and medical boot (Am. Compl. ¶¶ 94, 101), and that Dr. Canfield
and Physician Assistant Oaks gave him medication other than
Percocet (Am. Compl. ¶¶ 94, 96, 98-99, 102-03).

     The plaintiff's claims against defendants Canfield, Gorge,
and Oaks arise from events occurring at Southport Correctional
Facility, which is located in the Western District of New York.
All claims arising from events occurring in the Southern
District of New York have now been dismissed, and only the
claims arising from events occurring in the Western District of
New York remain.  The defendants argue that these remaining
claims should be transferred to the Western District of New York

pursuant to 28 U.S.C. § 1404(a).  (Defs.' Supplemental Mem. at 3-4, Jan. 22, 2013.)

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a). The inquiry under this provision involves two parts: first, whether the action could have been brought in the transferee district, and second, whether the convenience of the parties and witnesses and the interests of justice favor transfer.  See Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006).

With respect to the first part, a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  "For the purposes of venue, state officers 'reside' in the district where they perform their official duties."  Simpson v. Rodas, No. 10 Civ. 6670, 2012 WL 4354832, at *9 (S.D.N.Y. Sept. 21, 2012) (citations and internal quotation marks omitted).  Because defendants Canfield, Gorge, and Oaks reside in the Western District of New York and the other defendants reside in the State of New York, venue would have been proper in the Western District of New York.  Hence, the action could have been brought

23

in the Western District of New York, satisfying the first part
of the inquiry.

With respect to the second part, although a plaintiff's
choice of forum "should not be disturbed unless the balance of
the factors tips heavily in favor of a transfer," Jasol Carpet,
Inc. v. Patcraft Commercial Carpet, Inc., No. 96 Civ. 3064, 1997
WL 97831, at *3 (S.D.N.Y. Mar. 6, 1997), the factors favoring
the alternative forum in this case are compelling.  All of the
remaining defendants reside in the Western District of New York,
and the events giving rise to the remaining claims all occurred
in the Western District of New York.  It is clear that the
convenience of the parties and witnesses as well as the
interests of justice favor transferring this case to the Western
District of New York.  See, e.g., Simpson, 2012 WL 4354832, at
*9-10 (transferring venue from the Southern District of New York
to the Northern District of New York because the remaining
defendants resided there and the events giving rise to the
remaining claims occurred there).

Accordingly, this case shall be transferred to the United
States District Court for the Western District of New York,
where this action could have been brought and where it should
now proceed for the convenience of the parties and witnesses and
in the interest of justice.

**CONCLUSION**

The Court has considered all of the arguments of the parties.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  For the foregoing reasons, the defendants' motion to dismiss is **granted** with respect to the plaintiff's claims for which venue in this District is proper.  The Clerk is directed to **transfer** this case to the United States District Court for the Western District of New York and to close Docket No. 92.

        **SO ORDERED.**

**Dated:      New York, New York**
**             February 14, 2013**            /s/ _____
                                              **John G. Koeltl**
                                       **United States District Judge**

25